IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01470-RBJ

MAGPUL INDUSTRIES, CORP.,

    Plaintiff,

v.

BLUE FORCE GEAR, INC.,

    Defendant.

ORDER

This matter comes before the Court on Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery [ECF No. 20]. For the following reasons, the plaintiff's motion is granted in part and denied in part.

**BACKGROUND**

On May 27, 2014 Magpul Industries, Corp. ("Magpul") filed a lawsuit seeking declaratory judgment of (1) non-infringement and (2) invalidity of U.S. Patent No. 8,733,601 ("the '601 Patent") against Blue Force Gear, Inc. ("BFG"). The '601 Patent protects the design of a rifle sling marketed as the Blue Force Gear Vickers Combat Application Sling. For purposes of this motion it is important to note that Vickers refers to Larry Vickers, a host of tactical firearms-related television shows on the Sportsman Channel.

BFG has moved to dismiss the suit on the grounds that there is no subject matter jurisdiction over the action and no personal jurisdiction over it. [ECF No. 16]. Magpul opposes the motion to dismiss and now seeks leave to conduct jurisdictional discovery.

> Magpul requests the following discovery:
>
> 1. Documents establishing the relationship between Larry Vickers and BFG.
> 2. Documents sufficient to show monetary payments, or other non-cash compensation, provided by BFG to Mr. Vickers.
> 3. Documents that establish BFG's control over, or coordination with, Mr. Vickers.
> 4. License agreements, settlement agreements, covenants not to sue, and demand letters relating to the '601 Patent.
> 5. Documents relating to the licensing or threat of enforcement of any rights under the '601 Patent.
> 6. Communications between BFG and the Defense Logistics Agency that refer or relate to the '601 Patent or its patent application, Magpul, or Colorado.
> 7. BFG's protest bids filed with the U.S. Government Accountability Office in 2014.

*See* [ECF No. 20 at 7]. These seven requests fall into two broad categories of information: (i) the relationship between Larry Vickers and BFG (Nos. 1–3) and (ii) BFG's communications to others relating to the '601 Patent (Nos. 4–7). The former category concerns the motion to dismiss for lack of subject matter jurisdiction, while the latter relates to whether the Court may exert personal jurisdiction over BFG.

BFG opposes Magpul's requests for discovery. With respect to the first category, it argues that BFG's assertions about its relationship with Mr. Vickers do not conflict with the evidence proffered by Magpul, such that any additional discovery on the matter is not warranted. In regards to the second category, BFG contends that these documents are irrelevant to the question of whether personal jurisdiction exists in this case. In addition, BFG argues that all of these discovery requests are based on speculation and are unlikely to result in information changing the outcome of the motion to dismiss.

# ANALYSIS

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). While the matter is generally left to the broad discretion of a district court, *see id.*, "a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant," *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (internal citations omitted). "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" *Sizova*, 282 F.3d at 1326 (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). The Tenth Circuit has held that a district court did not abuse its discretion in refusing a party's jurisdictional discovery requests where there was a "very low probability that the lack of discovery affected the outcome of th[e] case." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004). It is also not an abuse of discretion to deny a request for jurisdictional discovery if the request is based "on little more than a hunch that it might yield jurisdictionally relevant facts." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)).

## A. **Subject Matter Jurisdiction – Discovery Requests Nos. 1–3.**

BFG contends that there is no subject matter jurisdiction over this case because there was no actual case or controversy at the time of plaintiff's filing. An Article III case or controversy exists in a declaratory judgment action when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of

3

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation and internal quotation marks omitted). "The burden is on the party claiming declaratory judgment jurisdiction . . . to establish that an Article III case or controversy existed *at the time that the claim for declaratory relief was filed* and that it has continued since." *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014) (emphasis added).[1]

Magpul alleges that an Article III case or controversy existed at the time of filing. In particular, it contends that prior to filing BFG twice accused Magpul of copying the '601 Patent and threatened that Magpul would be required to pay a royalty or face legal ramifications. The first alleged threat took place when Mr. Vickers called Drake Clark of Magpul and accused Magpul of copying the '601 Patent design. *See* Am. Compl. [ECF No. 12] ¶¶ 16–17. Mr. Vickers allegedly maintained that Magpul should pay a royalty for using the design and suggested that Mr. Clark contact the CEO of BFG, Ashley Burnsed, to discuss such an arrangement. *See id.* ¶ 17. Magpul insists that Mr. Vickers was acting on behalf of BFG when he made that call, and that this conversation along with a future discussion between Mr. Clark and Mr. Burnsed together created an actual case or controversy.

The question at issue in this matter is whether Mr. Vickers was acting as an agent of BFG when he (allegedly) spoke to Mr. Clark. Discovery Requests Nos. 1–3 are sought for purposes of establishing this relationship. Magpul insists that it has reason to believe that Mr. Vickers was an agent of BFG because (allegedly) (1) BFG worked jointly with Mr. Vickers to develop the '601 Patent, (2) Mr. Vickers receives a royalty on sales of the patented product, and (3) Mr. Vickers demonstrated detailed knowledge of the '601 Patent's prosecution when he spoke to Mr.

---

[1] With respect to such issues as patent infringement, it is appropriate to look to the law of the Federal Circuit, "because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (citation omitted).

Clark, suggesting coordination between Mr. Vickers and BFG. *See* [ECF No. 20 at 4–5]. BFG does not dispute that Mr. Vickers is a celebrity endorser of the patented product; in fact, it markets the product as the Blue Force Gear Vickers Combat Application Sling. However, BFG alleges that it has sole ownership over the '601 Patent and that public ownership records were available both before the call between Mr. Vickers and Mr. Clark took place and in advance of the filing of this action.

With respect to the plaintiff's first two allegations, Magpul has provided no legal authority supporting a position that participating in a joint venture or receiving a royalty on sales of the patented item would render Mr. Vickers an agent of BFG for purposes of enforcing the '601 Patent. And Magpul has not claimed that Mr. Vickers has any ownership interest in the patent or a right to enforce it. As to Mr. Vickers' knowledge of the patent prosecution, BFG contends that the information surrounding the patent prosecution was available to the public before the phone call between Mr. Vickers and Mr. Clark took place. Though Magpul may have a hunch that Mr. Vickers is acting in coordination with BFG, it is no more than that.

To reiterate, Magpul seeks discovery in three broad areas with respect to Mr. Vickers: (1) documents establishing the relationship between Mr. Vickers and BFG; (2) documents sufficient to show monetary payments, or other non-cash compensation, provided by BFG to Mr. Vickers; and (3) documents that establish BFG's control over, or coordination with, Mr. Vickers. For unknown reasons no request has been made to depose Mr. Vickers, which might be the most effective way to determine whether and to what extent he acted as an agent of BFG. In any event, the documents requested have either not been shown to be relevant – such as a payment scheme between Mr. Vickers and BFG – or are so broad that they would result in a fishing expedition. A hunch (or a hope) that Mr. Vickers acted as an agent of BFG when he spoke with

Mr. Clark, without more than has been shown to the Court so far, is insufficient to warrant potentially extensive and expensive document production. Discovery Requests Nos. 1–3 are therefore denied.

### B. Personal Jurisdiction – Discovery Requests Nos. 4–7.

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984). In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 US. 310, 323 (1945).

Minimum contacts may be established in two ways: general jurisdiction and specific jurisdiction. Here, Magpul argues that the Court only has specific jurisdiction over BFG. Specific jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted). Simply put, "the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added). In a declaratory judgment patent action, the nature of the claim "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). "The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.*

at 1332–33 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

With respect to patent owners, "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998). For example, "ordinary cease-and-desist notices sent by a patentee to an alleged infringing party in a different state are not sufficient to subject the patentee to specific jurisdiction in that state." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011). The same is true for other types of communication, such as warnings, threats of infringement actions, and offers to license. *See id.* at 791. However, the *Red Wing Shoe* policy considerations do not apply when the defendant communicates its complaint "to a third party with the intent that the third party take action directly against plaintiffs' business interests." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 887 (Fed. Cir. 2008) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1082 (10th Cir. 2008)). Still, "enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum," even if the effect of the enforcement activities is felt in the forum. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011).

In Discovery Requests Nos. 4–5, Magpul seeks license agreements, settlement agreements, covenants not to sue, demand letters, licensing offers, and any other document concerning the enforcement of BFG's rights under the '601 Patent. Yet Magpul does not explain how these documents would withstand the *Red Wing Shoe* standard, which allows a patent holder to send these types of communications without subjecting itself to the jurisdiction of the recipient's home state. Discovery Requests Nos. 4–5 are therefore denied.

In Discovery Request No. 6, Magpul seeks to discover communications between BFG and the Defense Logistics Agency ("DLA") that refer or relate to the '601 Patent or its patent application, Magpul, or Colorado. DLA presents itself as a combat logistics support agency that sources and provides nearly 100 percent of consumable items and 85 percent of spare parts to the United States military. *See* Pl's. Ex. E [ECF No. 20-6].[2] In a cease-and-desist letter addressed to military supplier Savvy Sniper, and concerning the '601 Patent, BFG copied two DLA employees and the DLA Contact Center, among others. *See* Pl's. Ex. B. [ECF No. 20-3]. The plaintiff alleges that BFG included these DLA contacts in order to elicit action by the DLA, in particular to eliminate sales of the allegedly infringing products to the military. While Savvy Sniper is an Ohio-based company, Magpul may seek to determine whether any communications were made by BFG to DLA which would give rise to specific jurisdiction over BFG in Colorado. For example, whether a letter was sent directly to DLA employees to inform them that Magpul was infringing on the '601 Patent with the intent of eliminating sales of Magpul's rifle sling to the military.

Magpul's request, however, casts too wide a net. As discussed earlier, specific jurisdiction exists where the defendant's *suit-related* conduct creates a substantial connection with the forum state, or where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. Magpul seeks a declaratory judgment that (1) it has not infringed the '601 Patent and (2) the '601 Patent is invalid. Yet Magpul seeks all communications between BFG and DLA that refer or relate to the '601 Patent or its patent application *or* Magpul *or* Colorado. Communications relating solely to the patent without any connection to Colorado or to Magpul would not constitute suit-related conduct giving rise to this

---

[2] The Court overrules BFG's objection to this Exhibit and takes judicial notice of the information contained on the DLA website as the manner in which DLA presents itself to the public, available at http://www.dla.mil/Pages/ataglance.aspx.

action. The same is true for communications concerning Magpul or Colorado that lack any connection to the '601 Patent. The Court therefore denies Discovery Request No. 6 as written, but grants the following: Magpul is entitled to discover communications between BFG and DLA that refer or relate to the '601 Patent or its patent application *and* to either Magpul or Colorado.

Magpul has specifically asked for production of any DLA communications that occurred between December 18, 2013 and the present date. *See* Requests for Production [ECF No. 20-8 at 6] Request No. 6. BFG objects on the grounds that jurisdiction must exist at the time the complaint is filed. The Federal Circuit has held that in personam and subject matter jurisdiction must be pleaded and proved at the time of filing the original complaint. *See Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1384 (Fed. Cir. 2010). Magpul filed this suit on May 27, 2014. Therefore, Discovery Request No. 6 is additionally limited to communications that took place between December 18, 2013 and May 27, 2014.

Finally, in Discovery Request No. 7 Magpul seeks BFG's protest bids filed with the U.S. Government Accountability Office in 2014. Magpul contends that BFG submitted three protest bids in 2014 with respect to bids awarded by DLA. *See* [ECF No. 20 at 6]. It argues that insofar as the protest bids were directed towards Magpul, Colorado, the '601 Patent, or otherwise used to create barriers or delays for regulatory approval of rifle slings, they would be relevant to the jurisdictional analysis. *See id.* at 7. Magpul again seeks far more than the jurisdictional analysis would allow. Therefore, the Court denies Discovery Request No. 7 as written, but grants the following: Magpul is entitled to BFG's protest bids insofar as they refer or relate to the '601 Patent or its patent application *and* to either Magpul or Colorado.

Furthermore, only two of the bid protests were allegedly submitted prior to the filing of this action. The plaintiff alleges that the third after-filed bid protest is relevant "to the extent it collaborates, supports, or explains BFG's behavior prior to the filing of the Amended Complaint." *Id.* at 6–7. However, as discussed above, jurisdiction must be established at the time the *original* complaint is filed. Therefore, Discovery Request No. 7 is further limited to bid protests that were filed between January 1, 2014 and May 27, 2014.

## ORDER

For the foregoing reasons, Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery [ECF No. 20] is GRANTED IN PART and DENIED IN PART consistent with the rulings in this Order. Because the Court has scheduled a 90-minute evidentiary hearing on personal jurisdiction at 1:00 p.m. on December 19, 2014 the Court directs BFG to produce the documents authorized by this order (meaning that they must be in plaintiff counsel's hands) no later than December 12, 2014.

DATED this 4th day of December, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge